O

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>1) JESSE VASQUEZ<br>2) GILBERT OLIVA<br>3) LIZANDRO RINCON<br>4) ARTURO CRUZ<br>5) JOSE GONZALEZ<br>6) NOE GONZALEZ<br>7) ALBERTO HERNANDEZ<br>8) FRANCISCO FLORES<br>9) MANUEL HERNANDEZ<br>16) CESAR DELA CRUZ<br>23) LUIS A. AGUILAR<br>25) ARMANDO RAMIREZ<br><br>Defendant(s). | CASE NO. SACR 07-202(A)-DOC<br><br>**O R D E R DENYING MOTIONS TO SUPPRESS; DENYING MOTIONS FOR FRANKS HEARING** |

Before the Court are Defendants' Motions to Suppress (the "Motions to Suppress"), which are closely related to Defendants' Motions for a Franks hearing (the "Franks Motions"). Though various iterations of the Motions have been filed by individual, and individual groups of, Defendants to this lawsuit, all Defendants have joined in the pending Motions, which raise related issues.

**A.     Motions to Suppress**

The Motions to Suppress are made on the grounds that the wiretaps did not satisfy the showing of necessity required by 18 U.S.C. § 2518(1)(c).  In essence, Defendants argue that the wiretap applications in question failed this requirement because, in relevant part: (1) the wiretap applications understated the scope and import of information provided by certain confidential informants; (2) the wiretap applications understated the contemplated capability of existing informants to mine more information on the F13 organization; and (3) the wiretap applications, individually and collectively, made affirmative misrepresentations as to the amount of information already obtained by law enforcement.  On the basis of these arguments, Defendants request the suppression of some or all of the intercepted communications or, in the alternative, a *Franks* hearing to determine whether material omissions or misstatements were made in the affidavits accompanying the government's wiretap applications.

18 U.S.C. § 2518(1)(c) provides that the government's wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  The Ninth Circuit has interpreted this statutory provision to impose a "necessity" requirement, in light of "the statutory presumption against this intrusive method" of information gathering.  *See United States v. Gonzalez*, 412 F.3d 1102, 1112 (9th Cir. 2005).  The Ninth Circuit has adopted:

> a 'common sense approach' in which the reviewing court uses a standard of reasonableness to evaluate the government's good faith effort to use alternative investigative means or its failure to do so because of danger or low probability of success.  Though the wiretap should not ordinarily be the initial step in the investigation, . . . law enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap.

*United States v. Canales Gomez*, 358 F.3d 1221, 1225-26 (9th Cir. 2004) (internal quotation marks and citations omitted).

This Court therefore proceeds first by reviewing de novo "whether the application for wiretapping was submitted in compliance with 18 U.S.C. § 2518(1)(c)" and then reviewing "the issuing court's decision that the wiretaps were necessary for an abuse of discretion." *See United States v. Garcia-Villalba*, 585 F.3d 1223, 1228 (9th Cir. 2009) (quoting *United States v. McGuire*, 307 F.3d 1192, 1197 (9th Cir. 2002)). In so doing, this Court must "employ a 'common sense' approach to evaluate the reasonableness of the government's good faith efforts to use traditional investigative tactics or its decision to forego such tactics based on the unlikelihood of their success or the probable risk of danger involved with their use." *Id.* (quoting *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005)).

### 1. "Full and Complete Statement"

Starting in March of 2005, the government submitted wiretap applications on thirteen occasions, seeking the authority to intercept wire communications from 14 telephones. Defendants argue, on an individual and collective basis, that all of the wiretap applications omitted information material to Judge Schiavelli's determination of necessity and, in so doing, failed to comply with the requirement of a full and complete statement of why existing investigative techniques were insufficient.

The Court rejects Defendants' claim that "general allegations" in a warrant affidavit alone demonstrate the government's non-compliance with the requirements of section 2518(c). Indeed, Defendants construct a straw man when they argue that the government "must do more than 'merely characterize a case as a gambling conspiracy or drug conspiracy that is in general tough to crack.'" (Dkt. 1151 at 5:19-21 (citing *United States v. Abascal*, 564 F.2d 821, 825-26 (9th Cir. 1977)).) After reviewing with great care the voluminous affidavits that accompanied the government's wiretap applications, as well as the lengthy transcript from the hearings on this matter, the Court concludes that the government's affidavits were far from conclusory. Rather, the government provided Judge Schiavelli with information about the extent of the confidential informants' prior infiltration of the F13 organization, as well as their ability, if any, to infiltrate the organization in the future. The government identified the specific techniques already used by law enforcement and the deficiency of those efforts. And, finally, the government expressed

its belief that the criminal scheme engaged in by Defendants, and other F13 members, was expansive and complex, so as to evade the government's scrutiny absent wiretaps. To the extent that Defendants consider it necessary for the affidavit to explain why every traditional tool would be inefficacious, such a requirement is not supported by the law of this Circuit. *See Garcia-Villalba*, 585 F.3d at 1229 n. 2 (citing *United States v. Staves*, 383 F.3d 977, 982 (9th Cir. 2004)). In other words, the affidavits in this case "did more than recite the inherent limitations of using confidential informants; [they] explained in reasonable detail why each confidential source or source of information was unable or unlikely to succeed in achieving the goals of the . . . investigation." *See United States v. Rivera*, 527 F.3d 891, 899 (9th Cir. 2008).

Defendants claim that the affidavits were insufficient in three particular respects. First, in their briefing, and at the hearing on this matter, Defendants faulted the government for understating the role played by CS2, a confidential informant referenced in the government's wiretap applications. Having reviewed all the materials submitted to Judge Schiavelli, including certain affidavits that the government submitted *in camera*, and having heard extensive testimony from the law enforcement officers who drafted the affidavits and had contact with CS2 during the relevant time period, this Court disagrees. The government had a strong interest in preserving CS2's safety when it neglected to include certain material information in the public affidavits it submitted to Judge Schiavelli. The government nonetheless described CS2's involvement in great detail in certain *in camera* affidavits, and Judge Schiavelli was materially apprised of CS2's capability prior to the issuance of the warrant.

Second, Defendants argue that CS8, a confidential informant referenced by the warrant affidavits, provided the government with "detailed information about the identity and criminal activity of those being targeted by the government's wiretap applications . . ." (*See* Dkt. 1151 at 7:6-8.) Defendants invite the Court to listen to a recorded conversation between government investigators and CS8 and, in addition, read the transcript of that recorded interview. *See id.* at 7:17-18; 7:24-25. According to Defendants, the government's affidavit in support of its wiretap applications understated the information obtained from CS8's interview by stating that: "CS8 recently provided very limited information concerning Florencia 13 members who are extorting

4

1  prostitutes and transgenders in and around the area of Huntington Park, California.  CS8
2  identified the monikers of two individuals who are suspected of leading the extortion efforts in
3  that area.  These two individuals have not been fully identified in this investigation . . . These
4  confidential sources are unwilling or unable to successfully infiltrate the Florencia 13
5  organization. . . . These confidential sources are also at this time not willing to testify for fear of
6  retaliation." (*See id.* at 6:25-7:5 (citing Joint Defense Exhibit, pages 781-82).)

7  Having reviewed the transcript of the government's interview with CS8, as well as the
8  audio recording, the Court sees no error in the affidavit's description of CS8's role, let alone any
9  error sufficient to show a lack of a full or complete statement relevant to Judge Schiavelli's
10 determination of the necessity for a wiretap.  Moreover, the Court recognizes that a summary of
11 CS8's interview with government investigators was provided to Judge Schiavelli.  From an *ex*
12 *post* perspective, CS8 failed to provide critical information to investigators, including, most
13 notably, the identity of members of the F13 organization.

14 Third, Defendants argue that the government possessed information, from previously
15 intercepted calls, as to the location of Noe and Jose Gonzalez' places of business even though
16 the affidavits in support of the wiretap applications for the first and second target telephones
17 stated that "prolonged physical surveillance on Target Subjects would most likely be noticed,
18 causing them to either become more cautious in their illegal activities, or flee to avoid further
19 investigation and prosecution.  Prolonged surveillance also poses a substantial threat to the
20 safety of officers conducting the surveillance." (*See* Dkt. 1370 at 14-15.)  The government's
21 affidavit in support of state *search* warrants for Jose and Noe Gonzalez' places of business stated
22 that methamphetamine and cocaine were being sold at the residence.  The state search warrant
23 affidavits also noted that government investigators had witnessed vehicles arriving at Jose and
24 Noe Gonzalez' place of business, and that this information – when coupled with the intercepted
25 telephone calls – provided investigators with reason to believe that drug sales were occurring.

26 The Court understands Defendants' argument to be that the information contained in the
27 state court affidavit shows that investigators had already obtained sufficient information about
28 the activities at the target residence, such that a wiretap was not necessary.  Omitting this

1 information, according to Defendants, deprived Judge Schiavelli of material knowledge.  The
2 flaw in Defendants' argument is that the activities at the 71st street address purportedly used by
3 Noe and Jose Gonzalez are not dispositive to the necessity for a wiretap.  In fact, the Court
4 agrees with the government that the 71st street location appeared uninhabitable and the wiretap
5 applications were concerned with Jose and Noe Gonzalez' other residences, including personal
6 residences, for which the government had much less information.  In addition, Judge Schiavelli
7 was apprised of the fact that the 71st street residence was used for "narcotics trafficking."  (*See*
8 Joint Exhibit 175.)

9       Defendants' remaining arguments involve claims that are unsubstantiated by either the
10 evidentiary record or the hearing on this matter.  Most of these arguments were abandoned by
11 Defendants' ultimate briefing on this matter and, based upon its review of the affidavits, the
12 Court considers such claims insufficient to sustain Defendants' Motions.  Accordingly, the Court
13 finds that the affidavits in support of the wiretap applications were submitted in compliance with
14 18 U.S.C. § 2518(1)(c).

15       **2.    Necessity**

16       The Ninth Circuit, in cases virtually identical to this one, has time and again held that the
17 mere availability of a confidential informant does not demonstrate the absence of necessity for a
18 wiretap, *even where that informant has already provided information to investigators*.  *See*
19 *United States v. Fernandez*, 388 F.3d 1199, 1236 (9th Cir. 2004) (citing *United States v.*
20 *Shryock*, 342 F.3d 948, 976 (9th Cir. 2003) (finding that despite the government's ready access
21 to seven confidential informants, the government could not possibly discern "the full nature and
22 extent of the enterprise and its countless, and at times disjointed, criminal tentacles")).  Both
23 *Shryock* and *Fernandez* were "Mexican Mafia" cases involving groups with sophisticated
24 operating structures.

25       Moreover, the government is entitled to consider the possibility that grand jury subpoenas
26 and interviews with informants would be ineffective given the high fear of retaliation by the
27 gang, thereby providing insufficient information while at the same time alerting the targets to the
28 existing investigation.  *United States v. Baker*, 589 F.2d 1008, 1013 (9th Cir. 1979) (noting, in

1 addition, that the "indiscriminate pursuit to the bitter end of every non-electronic device as to
2 every telephone and principal in question to a point where the investigation becomes redundant
3 or impractical or the subjects may be alerted and the entire investigation aborted by unreasonable
4 insistence upon forlorn hope"). This is because in a large and operationally complex criminal
5 conspiracy such as this one, pursuing some conspirators at the expense of others is fraught with
6 tactical error and public harm. Indeed, the Ninth Circuit has "consistently upheld findings of
7 necessity where traditional investigative techniques lead only to apprehension and prosecution of
8 the main prosecutors, but not to the apprehension and prosecution of . . . other satellite
9 conspirators." *McGuire*, 307 F.3d at 1199 (quoting *United States v. Torres*, 908 F.2d 1417, 1422
10 (9th Cir. 1990)). Thus, the necessity requirement must be evaluated not on a piece-meal
11 conspirator-by-conspirator basis, but in view of the broader RICO claims, which necessitate the
12 existence of an enterprise. *See id.*
13 This Court has once before rejected the core claim in Defendants' Motions, noting that the
14 investigative techniques used by the government prior to obtaining the wiretap repeatedly
15 encountered dead ends. For example, physical surveillance was shown to be unsuccessful, as
16 several attempts were foiled by countersurveillance conducted by individuals in the neighborhood
17 who used cars and bicycles to track the movement and locations of police officers. The
18 organization demonstrated sophistication in evading physical surveillance and insulating leaders
19 from investigation. In one incident, the group shielded itself through the use of a "crash dummy"
20 during the government's seizure of a drug house alleged to have been controlled by the group.
21 Moreover, the government undertook financial investigations that proved unsuccessful, as
22 detailed in the affidavits supporting the wiretap applications, as well as the government's briefing
23 on this matter.
24 Defendants commit the basic error of conducting an *ex post* analysis of the affidavit's
25 sufficiency, limiting the scope of the wiretap applications to the evidence eventually admitted at
26 trial. Such hindsight disregards the potential for the wiretaps to adduce more information than
27 the informants could possibly provide, but *more importantly*, ignores the fact that the government
28 pursued the wiretap applications because investigators were incapable of calculating the breadth

1  and capability of the F13 organization based on the informants alone. *See Fernandez*, 388 F.3d at
2  1236. It is precisely for this reason that, where a triad of factors are present – *e.g.*, danger to
3  informants, deficiencies in informants' knowledge, and informants' potential unwillingness to
4  testify – "[t]he government need not show that informants would be useless in order to secure a
5  court authorized wiretap." *Canales Gomez*, 358 F.3d at 1226; *see also McGuire*, 307 F.3d at
6  1197.

7        In their briefing and at the lengthy hearing on this matter, Defendants suggested that each
8  wiretap application should be evaluated independently, such that the development of a
9  relationship with a particular informant following the issuance of the first wiretap should obviate
10 the necessity for subsequent wiretaps. This is true to a point. *See United States v. Gonzalez*, 412
11 F.3d 1102 (9th Cir. 2005) (holding that "[e]ach wiretap application must separately satisfy the
12 necessity requirement"). However, Defendants ignore the practical fact that a confidential
13 informant in a complex criminal conspiracy, especially in cases involving violent gangs, provides
14 information (if any) in the view of existing facts (including the presence of wiretaps). Put simply,
15 "any previous success from the use of confidential informants is even less persuasive in the
16 context of an investigation of criminal conspiracy." *Canales Gomez*, 358 F.3d at 1226.

17       Finally, Defendants' reliance on *United States v. Ippolito*, 774 F.2d 1482 (9th Cir. 1985) is
18 misplaced. Defendants argue that generalized language submitted in support of the wiretap
19 applications must be disregarded. This argument ignores the plain similarities between types of
20 criminal conspiracies – the types of similarities that justify common definitions for the sake of
21 precision. Indeed, even courts rely upon common language to describe operationally similar
22 enterprises engaged in criminal acts. *See, e.g.*, *Fernandez*, *supra*. Moreover, the facts in *Ippolito*
23 are inapposite to this case. In *Ippolito*, government agents coached the informant, who was ready
24 and willing to cooperate, to falsify his unwillingness to testify "so that his refusal could be used
25 to demonstrate the necessity of a wiretap." 774 F.2d at 1484. The scope of the scheme in
26 *Ippolito* was significantly smaller, such that the informant could have been an important
27 participant in the defendant's activities. *Id.* Here, Defendants do not allege that any confidential
28 informant was sufficiently intertwined with the F13 organization, so as to serve as the primary or

1  secondary manager of the schemes.  More importantly, Defendants cannot claim that the schemes
2  in question lent themselves to reliable filters (such as informants capable of keeping track of all
3  movements of all potential participants).
4       Having reviewed the affidavits submitted in support of the wiretap applications, this Court
5  finds a clear showing of necessity as a matter of established law.  The affidavits submitted in
6  support of the wiretap applications provided a full and clear account of the government's
7  completed investigation, including the capability of confidential informants, if any, and the
8  government's fears about continued use of such confidential informants.  The affidavits further
9  demonstrated the continued inefficacy of traditional investigative techniques, including
10 undercover officers (individuals in the neighborhood were aware of their presence), physical
11 surveillance (individuals in the neighborhood were able to evade detection), pen registers (they
12 did not provide content about the identity of the speaker and the nature of the conduct), and
13 seizures of property.
14      For the foregoing reasons, Defendants' Motions to Suppress are DENIED.
15      **B.     Franks Motions**
16      By their Franks Motions, Defendants individually and collectively request an evidentiary
17 hearing to determine whether the government affidavits in support of the wiretap applications
18 contained material omissions or misstatements.  "A *Franks* hearing is appropriate where the
19 defendant makes a substantial preliminary showing that a false statement was (1) deliberately or
20 recklessly included in an affidavit submitted in support of a wiretap; and (2) material to the
21 district court's finding of necessity."  *See Shryock*, 342 F.3d at 977 (citing *United States v.*
22 *Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000)).
23      For reasons already outlined in the Court's discussion with respect to the Motions to
24 Suppress, Defendants have failed to satisfy either prerequisite for a *Franks* hearing.  After an
25 extensive hearing and the Court's exhaustive comparison of the text of the affidavit and
26 supporting documents against the facts revealed during discovery, the Court concludes that:
27 (1) Judge Schiavelli was apprised of *all* relevant information regarding any confidential
28 informants accessed by the government, including but not limited to the deficiencies in the

information provided by such confidential informants; and (2) there was no material omission or false statement with respect to the 71st street address. Defendants' remaining arguments have been considered and disposed of by this Court in its consideration of the Motions of Suppress.

      Despite the great latitude afforded to counsel for Defendants by the Court in conducting an evidentiary hearing that included extensive questioning of government witnesses, Defendants have failed to demonstrate that a *Franks* hearing is warranted. For the foregoing reasons, the Franks Motions are DENIED.

IT IS SO ORDERED.

DATED: January 27, 2010

                                              _____
                                                  DAVID O. CARTER
                                              United States District Judge